## Palmer & a., Pet'r v. Conway & a.

Whether by virtue of Chapter 1, § 13 of the Revised Statutes, a majority of a board of road commissioners may execute the joint authority which the statutes purport to confer upon the entire board, in case all are not notified, and do not meet and consult, *quære?*

Where a vacancy exists in a board of road commissioners, there is no authority in the remaining members to discharge the duties intrusted to the board.

Where, after the decease of one of the road commissioners, the other two gave notice, and heard the parties, and made a report laying out a highway; it was *held*, that the report was unauthorized, and the same was set aside.

PETITION for a new highway in Conway, Eaton, Freedom, Effingham, and Ossippee. At the May term of the Court, in 1847, the petition was referred to Reuben Smith, jr., and Samuel S. Parker, two of the Road Commissioners elected for said county, and to Thomas Rust, who was appointed a Road Commissioner in this case, the other Commissioner being a resident of Ossipee, and interested. These gentlemen gave notice, and heard the parties, and made their report at the May term, 1848, which was then recommitted to the same board, and notice given for a further hearing. Before the day appointed for this hearing, Samuel S. Parker died, and Messrs. Smith and Rust, the surviving Commissioners, proceeded agreeably to their notice, heard

the parties, and made several material changes in the report. At the November term, their report was again recommitted to them, and further changes made in the report. At the May term, 1849, the towns of Freedom and Conway excepted to the report, on the ground that Smith and Rust had not competent authority to act after the decease of Parker.

*Hobbs*, for the petitioners. By the common law, when an authority is to be exercised by public officers, all must meet or be notified to meet, and, when assembled, a majority may act. *Despatch Line of Packets* v. *Belamy Manufacturing Co.*, and cases cited, 12 N. H. Rep. 206.

This provision of the common law has been altered in this State by chap. 1, § 13, of the Revised Statutes, which provides, that " all words purporting to give a joint authority to three or more public officers, shall be construed as giving such authority to a majority of them."

The statute provides, also, that there shall be chosen on the second Tuesday of March, annually, in each county, three road commissioners, each of whom shall hold his office until some other person is chosen and qualified in his stead. Rev. Stat. chap. 20, § 1. These commissioners have authority to give notice, &c. Rev. Stat. chap. 51.

Two are a majority of three. These two, then, have the same authority that is given to the three, and this, by the express words of the statute altering the common law on this subject, and, as the petitioners contend, in order that the business may not be delayed, even while the vacancy is being filled by appointment or election.

*Dearborn*, (with whom was *J. Eastman*,) for Freedom and Conway.

Where there are several statutes upon the same subject, they are to be construed together as one system. One part of the statute must be construed by another, so as the whole may stand, and every part have effect. 1 Burr. 474; 6 Dane, 30.

It is a maxim, that an affirmative statute does not repeal or

take away the common law. 6 Dane, 591, and authorities there cited.

After all, we are to consider the great fundamental question, namely: what did the legislature mean in passing the new statute? In the construction of statutes, the intention of the legislators ought alone to be regarded.

Guided by these rules, it is easy to arrive at the intention of the legislators touching the statutes in question. Chap. 2, § 1, of the Revised Statutes, requires the choice of three road commissioners. Chap. 1, § 13, provides that, " all words purporting to give a joint authority to three or more public officers, shall be construed as giving such authority to a majority of them, unless otherwise expressly declared." Chap. 20, § 10, gives authority to the justices of the Court of Common Pleas to declare the office of road commissioners vacant in certain cases, to wit; death, official misconduct, removal from the county, insanity, &c.

The eleventh section of chap. 20, provides that, in case of any vacancy, said justices shall appoint a commissioner, who shall be sworn, and shall perform all the duties, &c.

This statute makes it the duty of the Court to appoint. Chap. 50, § 6, provides that, if a road commissioner is interested in the petition requesting the laying out of a road, he shall not serve, but the vacancy shall be filled by the other commissioners. This section was repealed by the second section of the Act of the 2d of July, 1846. The first section of the act gives the power of appointing in such cases, &c., to the Justices of the Court of Common Pleas. The third section of chap. 51, requires them to make examination and hear all parties interested, in the same manner as selectmen are required to do, and gives like authority, &c. The fourth section requires them to make report. Chap. 51, § 2, gives power to two commissioners who do attend, in case one fails to attend, to appoint some suitable person to act in his stead. This section is not repealed by the act of the 2d of July, 1846, which only repeals the sixth section of chap. 50.

Taking into view all the above provisions of the statutes, and regarding them as one system, it is evident that the legislature

intended that there ever should be, on all occasions, a full board of road commissioners, and ever present to act. This is absolutely necessary to give effect to all the provisions of the statutes.

These statutes require, not only a full board of three commissioners, but, also, that there shall be three present at the doings of the commissioners; in order that if there should be a division in the opinion of the commissioners, two of their number might make report. This is agreeable to the rules and reasons of the common law.

It is a common principle, that a majority of a board of public officers may complete a piece of business, at the same time requiring all to be present at the hearing. 9 Barn. & Cres. 648; 17 C. L. Rep. 467. *King* v. *Witaker et al.*, 12 N. H. Rep. 226, and authorities there cited; 1 Barn. & Cres. 648; 1 Bos. & Pul. 229; Co. Litt. 181, b.; 1 Binn. 481. Where the authority is to do an act of a public nature, if all meet for the purpose of executing it, a majority may decide.

The statute giving authority to a majority to act, is merely in affirmance of the common law. Doubtless this act was made, that those not versed in law might readily understand, that a majority might decide and make report. This conclusion is put beyond doubt or cavil by the provisions of the Revised Statutes, chap. 51, § 2.

What evil did the legislature intend to avoid by this provision, requiring a full board? Most certainly that their doings should not be defeated by disagreement, which might be, if only two were present.

All the statutes giving authority to fill vacancies have reference to this in connection with other considerations.

The plain meaning of all the statutes is, that there ever must be a full board of three commissioners, and whatever may be the consequences, it is not for the Court to vary or evade.

If all the statute provisions cannot be reconciled, then the latter must prevail. If the legislators intended two commissioners to execute all the authority of the laws respecting laying out roads, why make any provision to fill vacancies in any case, or create a vacancy, or give the commissioners an oppor-

tunity and power, and even enjoin it upon them in a specified case ?

The legislators could not have been guilty of such gross folly, but have, in the plenitude of their wisdom, made provision to fill vacancies in every emergency. The very words of the statute, giving authority to a majority to act, imply and require a board of three to get a majority from.

WOODS, J. It is objected, that Smith and Rust had not competent authority to act upon the petition, in this case, after the decease of Parker, who was one of the three road commissioners of the county. It is conceded by the counsel for the petitioners, that according to the rule of the common law, applicable in cases of this character, the exception must prevail, that, where a joint authority is to be executed by public officers, all must meet, or have opportunity to act; but that a majority may execute the authority conferred. It is contended, however, that the rule of law thus stated, has been changed by sect. 13, chap. 1, of the Revised Statutes, which provides that " all words purporting to give a joint authority to three or more public officers, shall be construed as giving such authority to a majority of them."

Whether the provisions of this section are to be construed, as going farther than merely to adopt the common law rule, and to give it the form and sanction of a statutory enactment, we need not now decide. Upon further consideration it may be found that it was intended to change the rule of law, and to confer the authority to execute the duties upon a majority of the public officers appointed for the purpose, without giving notice or opportunity to the others to be present, and act in the case. Or it may be found that no such purpose, or design, was entertained by the legislature. It would be a strange state of the law, common or statute, that should require the appointment, or election of a board of officers, for the discharge of some important joint duty, while, at the same time, it should confer upon a bare majority, the power to execute the entire duty, without even requiring that notice or opportunity to act should be given

Palmer *v.* Conway.

to the minority.    Before the passage of the act referred to, after the meeting of the entire board, and opportunity given to all to take part in executing the power conferred, the action of a majority was sufficient.    And, most certainly, if the same necessity does not still exist, of giving opportunity, at least, to all upon whom the duty to discharge a joint public trust shall rest, the change will not be found to result from the explicitness of the language leading to that conclusion, but from some necessity of such construction, to avoid some mischief not now seen, which may lead the Court, hereafter, to give the act an interpretation in accordance with that view of the case.    From the facts disclosed in the present case, however, it appears, that after the decease of Parker there was no board of road commissioners, such as the statute requires, and, therefore, there were not three persons in office to whom the statute " purported to give a joint authority," upon a majority of whom, the statute regulating the choice of road commissioners, and prescribing their duties, could confer the authority to act in the case under consideration. The true and solid ground of objection to the authority of Smith and Rust to act, was, that at the time of their action there were not three officers then in authority as road commissioners, elected or appointed in any of the methods authorized by the statutes, competent to act in the case, a majority of whom did act.    And until there was a full board competent to act, there could be, as we conceive, no action of a majority.    Whatever may have been the intention of the legislature, with regard to conferring authority upon a majority to act when the board is full, we think it quite clear that, when there is not a full board, the statute confers no additional authority not before existing, such as is now claimed, upon those in office, until the vacancy or vacancies be filled.

By the first section of chap. 20, of the Revised Statutes, three road commissioners are required to be elected in each county.    And in case the person or persons elected shall decline to accept, remove from the county, resign, die, become insane, or when, from manifest hazard to the public interest, any vacany or vacancies shall be declared, in the manner pointed out by the

13 *

Palmer *v.* Conway.

statute, it is made the duty of the justices of the Court of Common Pleas, to fill such vacancy, by appointment. Rev. Stat. chap. 20, § 11. And repeated acts have been passed, treating the interest of a commissioner, in any particular petition, as creating a vacancy in the board *pro hac vice*, and authorizing the filling the vacancies thus existing, for the time being, by the appointment of some person disinterested, to fill the same. Rev. Stat. chap. 30, § 6; Pamphlet Laws, chap. 353, § 2; and chap. 996, § 1.

So, also, chap. 51, § 2, Rev. Stat., provides, that if, after giving notice of the time and place of hearing, as is required, " any one of the commissioners shall be unable to attend agreeably to the notice, &c., the two commissioners, who do attend, may appoint some suitable person to act in his stead."

Here, then, it is manifest, that there is no necessity for extending the authority of the commissioners beyond the plain purposes of the legislature.

Ample provision is made for filling any and all vacancies that may occur during the pendency of any proceeding before any board, and we are of opinion, upon a careful consideration of the statutes referred to, that there is no ground, as there is no occasion, for holding that a board, consisting of less than three, has any authority to act in any case, and that, if a majority can act at all, it must be a majority, at least, of a full board of commissioners in authority at the time.

We are therefore clearly of opinion that the exception interposed by Freedom and Conway to the acceptance of the report was well taken and must prevail.

*Report set aside.*